

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| TULLY TAVARES, ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 1:14-cv-1121 |
| UNITED AIRLINES, *et al.*, ) | Hon. Liam O'Grady |
| Defendants. ) | |

**MEMORANDUM OPINION**

This matter comes before the Court on a motion to dismiss filed by defendants United Airlines, Inc., United Continental Holdings, Inc., Marcelo Merlan, and Chris Branch ("the United defendants"). (Dkt. No. 26). The *pro se* plaintiff filed an opposition. (Dkt. No. 34). On August 21, 2015, the Court heard oral argument. During oral argument, the plaintiff submitted additional exhibits to the Court.

**I. Procedural History**

On August 29, 2014, plaintiff Tully Tavares ("Tavares" or "plaintiff") filed a complaint against the defendants based on alleged employment discrimination. He filed an amended complaint on September 2, 2014. He then filed a motion to file a second amended complaint, which was granted. On September 29, 2014, the second amended complaint was filed. The United defendants moved for dismissal of the second amended complaint. Following a hearing, during which the Court discussed with the *pro se* plaintiff the deficiencies in his complaint, the Court granted the motion to dismiss without prejudice to the plaintiff to refile his claims within 120 days. (Dkt. No. 24). On May 14, 2015, Tavares filed his third amended complaint against

the United defendants and the International Association of Machinists and Aerospace Workers ("IAM" or "the union").[1]

## II. Background

The facts evident from the third amended complaint are as follows: In 1980 and 1982, Tavares was involved in an automobile accident and a motor cycle accident respectively. *See* Third Am. Compl. at 2. On both occasions, he was flown to the hospital via helicopter following loss of consciousness. *Id.* In the 1980 accident, he was unconscious for 48 hours; in the 1982 accident, he was unconscious for two weeks. *Id.* Following the 1982 accident, he had severe trauma to his brain, a shattered elbow, and severe impairment of his eyesight due to blood leaking into his eye. *Id.* His mental abilities were also severely impaired. *Id.*

Tavares was hired by United as a baggage handler in 1999. *See* EEOC Charge. Beginning within one year of his employment, he was allegedly the victim of harassment at the workplace. *See* Third Am. Compl. at 3. Plaintiff claims he was "harassed on almost a regular basis due to [his] condition, [by] a number of the higher ups that were managers..." *Id.* at 6. His "condition" presumably refers to the physical and mental disabilities caused by his accidents. Tavares alleges that supervisors made false accusations against him. *Id.* An example is when he was accused of spitting on another person and/or the vehicle that person was operating. *Id.* Plaintiff was suspended as a result of this false accusation, and the union allegedly failed to assist him in defending against the accusation. *Id.* It is unclear on what date this incident occurred. The complaint also describes a work accident in which an airport passenger bus struck Tavares while he was operating a vehicle. *Id.* at 19. He claims he was falsely accused of running the stop line, even though he was properly stopped at the indicated line. *Id.* He then informed his supervisor that he was having "capacity problems" with driving, presumably due to his poor

---

[1] It appears that IAM has not been served.

eyesight and impaired mental abilities, and he wanted to be reassigned to work in the bag room. *Id.* Tavares claims that neither United nor the union did anything to make an accommodation for him. *Id.* It is unclear when exactly this incident occurred, but it was evidently sometime before the final incident that led to his termination.

On or about March 27, 2012, around 6:00 a.m., Tavares reported to the main terminal basement bag room at Dulles International Airport. *Id.* at 9. His job was to "collect empty cans and carts from varying locations, including tarmac areas, staging areas, storage areas, etc..." and bring them to the main terminal for later usage. *Id.* at 9–10. Even though there was a policy prohibiting the 4:30 a.m. morning crew from removing the main terminal high speed baggage carrier tugs,[2] this policy was normally disregarded. *Id.* at 10. Because the earlier morning crew had used the high speed carrier tugs as transportation to their next work locations, there were no high speed carrier tugs available for Tavares to use. *Id.*

Accordingly, his "only option" was to leave the basement bag room to find a vehicle. *Id.* He found an electric vehicle that was "extremely slow." *Id.* He did a safety check on the electric vehicle, checking the tires, horn, lights, turn signal, brake, steering wheel, emergency brake, seat belt, and battery charge. *Id.* However, because there was insufficient light in the area, he did not open the hood of the car for inspection, nor did he do an oil check. *Id.* Tavares alleges that he planned to do a thorough check under the hood when he had better light and when it was later in his shift, as he did not want to run late and cause bags not to be loaded onto aircraft on time. *Id.* at 10–11.

After driving the low speed electric vehicle to or near gate D5, he found an unoccupied high speed vehicle. *Id.* at 11. He performed a safety check on the outer safety equipment of the

---

[2] As described in the third amended complaint, a "baggage carrier tug" is a vehicle similar to a pickup truck, used to transport bags to be loaded onto airplanes. Third Am. Compl. at 10.

3

high speed vehicle, but there was still not enough light to check under the hood. *Id.* He drove the high speed vehicle to or near gate D10. His vehicle then struck a wheel chock, which he alleges was improperly left on the open tarmac. *Id.* Consequently, he was ejected upward and struck his head on the ceiling of the vehicle. *Id.* This resulted in severe physical injury. Plaintiff notes that although it was dark and he does not actually remember seeing the wheel chock, he believes there was a wheel chock on the ground and that this caused the accident. *Id.* at 11–12.

After striking the wheel chock with the vehicle, Tavares was bleeding and in shock. *Id.* at 12. He continued to drive the vehicle and drove through approximately three empty gates. Plaintiff's complaint is very unclear about what happened next, but it appears that he was accused of cutting off aircraft and driving under jetways, to which he responds, "HOGWASH." *Id.* He was also accused of failing to follow the vehicle service road ("VSR"), to which he responds that he was severely traumatized. *Id.* Although the complaint itself is very unclear about the details of the ensuing investigation and disciplinary process, the complaint refers to an exhibit Tavares passed up to the Court during the hearing on the previous motion to dismiss. *See id.* at 6 ("As noted in the booklet that I...presented to his honor...").

This exhibit contains the plaintiff's grievance file. Having reviewed the grievance file, the Court has ascertained the following facts. Tavares was represented by the union throughout the grievance process. On March 29, 2012, United investigated the incident and determined that Tavares committed multiple safety infractions, including (1) failing to complete the required user check sheet before driving the electric tug; (2) improperly taking the other vehicle which was assigned to a different work station; (3) failing to complete a user check sheet on the other vehicle; (4) not driving on the VSR; (5) cutting off an airplane pulling into the gate; (6) and driving under jetways. Based on these conclusions, United decided to issue a Level 5

4

disciplinary action, which was termination. It appears that Tavares had previous safety-related disciplinary actions and was already on Level 4.

A report dated June 7, 2012 summarizes the investigative review hearing on the proposed Level 5 action. It was determined that United met its burden to demonstrate that Tavares' actions warranted a Level 5 termination. He was terminated effective June 18, 2012. On August 22, 2012, there was a Step 3 grievance hearing to determine if the investigative review decision was proper. The Level 5 termination was upheld. On September 5, 2012, the union representative sent Tavares a letter notifying him that the union would not pursue further appeal. On November 28, 2012, Tavares filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Virginia Division of Human Rights.

### III. Standard of Review

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move for dismissal of a claim when the court lacks subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). The court must dismiss the action if it determines at any time that it lacks subject matter jurisdiction. FED. R. CIV. P. 12(h)(3). The burden is on the plaintiff to establish that subject matter jurisdiction exists. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). A district court should grant a Rule 12(b)(1) motion if the material jurisdictional facts are known and the moving party is entitled to prevail as a matter of law. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The

5

Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face" rather than merely "conceivable." *Id.* at 555, 570. Although a court must accept as true all well-pleaded factual allegations, the same is not true for legal conclusions. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id* (citing *Twombly*, 550 U.S. at 555).

Because the plaintiff in this case is *pro se*, his pleadings are entitled to liberal construction. *See, e.g., Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted). However, "[p]rinciples requiring generous construction of *pro se* complaints are not ... without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). ). "Even *pro se* plaintiffs must recognize Rule 8's vision for a system of *simplified pleadings* that give notice of the general claim asserted, allow for the preparation of a basic defense, [and] *narrow the issues* to be litigated..." *Sewraz v. Guice*, No. 3:08cv35, 2008 WL 3926443, at *1 (E.D. Va. Aug. 26, 2008) (citations and internal quotation marks omitted) (emphasis in original).

## IV. Discussion

The third amended complaint does not contain identifiable counts, which makes it difficult to determine what claims the plaintiff is bringing. It appears to the Court that plaintiff brings claims under the following statutes: the Civil Rights Act of 1991, 42 U.S.C. § 1981; Title

VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*; the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*; the Rehabilitation Act of 1973, §§ 29 U.S.C. 701 *et seq.*; and the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.*

### A. Claims under 42 U.S.C. § 1981

Plaintiff accuses the defendants of discrimination in violation of 42 U.S.C. § 1981, evidently for race and gender discrimination. It is unclear whether Tavares alleges racial harassment, disparate treatment, or both, so the Court analyzes the claim under both standards. In order to state a prima facie claim for harassment under § 1981, a plaintiff must demonstrate: (1) that he experienced unwelcome harassment; (2) the harassment was based on a protected characteristic; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. *See Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003); *see also White v. BFI Waste Servs., LLC*, 375 F.3d 288, 296–97 (4th Cir. 2004). To make out a prima facie case of disparate treatment under § 1981, a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the job and his performance satisfied his employer's expectations; (3) he suffered an adverse employment action; and (4) the circumstances surrounding the adverse action give rise to an inference of unlawful discrimination. *See Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

There are no facts whatsoever suggesting that Tavares was mistreated because he is a white male. The only possible allegation related to race or gender is that a Puerto Rican female identified as "Mrs. Vaughn" ran into three planes on separate occasions while operating a vehicle similar to the one operated by Tavares, and she was not fired. *See* Third Am. Compl. at 3.

7

Tavares believes he was "treated differently" because he is a white male. *Id.* at 14. This falls very short of alleging sufficient facts to state a plausible claim of discrimination.

Plaintiff fails to state a claim for racial harassment because even assuming that the discipline Tavares was subject to constituted harassment, the mere fact that a Puerto Rican woman was not fired when she hit three airplanes does not raise a plausible inference that race or gender motivated the decisions to discipline and terminate Tavares. Similarly, there are insufficient allegations to establish disparate treatment because the Court cannot reasonably infer from these facts that Tavares and Mrs. Vaughn were similarly situated. There are no allegations describing Mrs. Vaughn's job duties, her prior disciplinary record as compared to plaintiff's, or the circumstances of her alleged accidents. For these reasons, the § 1981 claims must be dismissed for failure to state a claim.

### B. Claims under Title VII

The requirements for stating a claim of discrimination under Title VII are the same as those for § 1981, therefore the Title VII claims must also be dismissed for failure to state a claim. *See, e.g., Brown v. Triton Sec.*, No. 1:04cv1544, 2005 WL 2708914, *3 (E.D. Va. Oct. 19, 2005) ("the analytical framework under each statute is the same") (citation omitted).

More importantly, however, this Court lacks subject matter jurisdiction over the Title VII claims. Before filing suit under Title VII, a plaintiff must first file a charge of discrimination with the EEOC. *See* 42 U.S.C. § 2000e–5. While the timeliness component of the administrative exhaustion requirement is not a jurisdictional bar, failure to exhaust administrative remedies "deprives the federal courts of subject matter jurisdiction." *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (citation omitted). "In determining what claims a plaintiff properly alleged before the EEOC, [a court] may look only to the charge filed with that agency."

8

*Balas v. Huntington Ingalls Indus.*, 711 F.3d 401, 408 (4th Cir. 2013). " 'Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.' " *Jones*, 551 F.3d at 300 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996)). The "touchstone for exhaustion is whether [the] plaintiff's administrative and judicial claims are reasonably related, not precisely the same..." *Sydnor v. Fairfax County*, 681 F.3d 591, 595 (4th Cir. 2012) (internal quotation marks and citation omitted).

The Fourth Circuit has identified at least three situations in which allegations in an EEOC charge are typically insufficient to exhaust a Title VII claim. "[A] claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex." *Jones*, 551 F.3d at 300 (citations omitted). Likewise, "a claim will also typically be barred if the administrative charge alleges one type of discrimination—such as discriminatory failure to promote—and the claim encompasses another type—such as discrimination in pay and benefits." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005) (citations omitted). Finally, "a plaintiff fails to exhaust his administrative remedies where ... his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit." *Id.* at 506. However, EEOC charges often are not completed by lawyers and therefore "courts construe them liberally." *Id.* (citing *Alvarado v. Bd. of Trs. of Montgomery Cmty Coll.*, 848 F.2d 457, 460 (4th Cir. 1988)).

The EEOC charge filed by Tavares is attached as Exhibit 1 to the defendants' motion to dismiss. The charge states that following plaintiff's recovery from the injury he sustained during the vehicle accident, he was discharged by United because he could not perform his duties any longer. *See* Ex. 1 to Def.'s Mot. The charge also alleges that Tavares "was not offered any sort of accommodation for [his] disability, nor was [he] given the opportunity to request one." *Id.* He believed he was discriminated against "because of [his] disability, in violation of the Americans with Disabilities Act..." *Id.* No other basis of discrimination is alleged, such as race or gender. No other form of discrimination beyond failure to accommodate is alleged.

The bases of discrimination for the Title VII claims raised in this lawsuit are race and gender. The types of discrimination, as best as the Court can ascertain, are harassment and/or disparate treatment. Because the EEOC charge and the instant complaint raise entirely different bases and types of discrimination, the Title VII claims brought in this litigation are not reasonably related to the claims in the EEOC charge. Accordingly, the Title VII claims must be dismissed for lack of jurisdiction, or alternatively for failure to state a claim.

### C. Americans with Disabilities Act Claims

Plaintiff also brings claims under the Americans with Disabilities Act ("ADA"), and the ADA Amendments Act ("ADAAA"). Like Title VII, the ADA requires plaintiffs to exhaust administrative remedies by filing an EEOC charge. "After a complainant files a charge with the EEOC, the ADA requires the EEOC to 'notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent.' " *Crabill v. Charlotte Mecklenburg Bd. Of Educ.*, 423 F. App'x 314,

320–321 (4th Cir. Apr. 20, 2011) (quoting 42 U.S.C. § 2000e–5(f)(1)). "The 90-day filing requirement is 'not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.' " *Id.* at 321 (quoting *Laber v. Harvey*, 438 F.3d 404, 429 n. 25 (4th Cir. 2006) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982))).

The Fourth Circuit has stated that equitable tolling generally applies in two types of situations: (1) where the plaintiff "has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," *id.* (citations omitted); or (2) where "extraordinary circumstances beyond the plaintiff['s] control made it impossible to file the claims on time." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000) (citation omitted). The decision whether to allow equitable tolling turns on the facts and circumstances of each case. *Crabill*, 423 F. App'x at 321 (citation omitted). "Federal courts have typically extended equitable relief only sparingly." *Id.* (citations omitted).

Here, the right-to-sue notice was mailed to Tavares on July 18, 2013, *see* Ex. 2 to Defs.' Mot., and the law presumes its receipt within three days, on July 21, 2013. *Crabill*, 423 F. App'x at 321 (citing *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n. 1 (1984)). Thus, the 90-day period ended on October 19, 2013. Tavares did not file the first complaint in this Court until August 29, 2014. Further, there are no facts indicating that equitable tolling is warranted under the circumstances. Accordingly, the ADA claims will be dismissed as time-barred.[3]

### D. Rehabilitation Act Claims

---

[3] The Court also notes that this analysis applies with equal force to the Title VII claims, providing yet another ground for dismissal of the Title VII claims. *See, e.g., Cobb v. Towson Univ.*, No. ELH–14–02090, 2015 WL 3654562, at *10 (D. Md. June 10, 2015) ("Title VII requires that a plaintiff commence a court action founded on a particular Charge of Discrimination within ninety days of receipt of a letter from the EEOC stating that [he] has a right to file suit in court based on the allegations in that same Charge of Discrimination.").

Plaintiff also brings claims under the Rehabilitation Act. The Rehabilitation Act prohibits discrimination against disabled individuals with respect to any program or activity that receives federal financial assistance. *See* 29 U.S.C. § 794(a). The Act does not define "federal financial assistance." "Courts, however, have defined the term as used in the Rehabilitation Act to mean the federal government's provision of a subsidy to an entity." *Shotz v. American Airlines, Inc.*, 420 F.3d 1332, 1335 (11th Cir. 2005) (collecting cases). The Supreme Court has held that the Rehabilitation Act generally does not apply to commercial airlines, because airlines did not receive federal financial assistance within the meaning of the statute.[4] *See U.S. Dep't of Trans. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 599 (1986).

However, this general holding is not the end of the inquiry. Courts to consider the issue since then usually engage in the analysis prescribed by the Supreme Court to determine whether the particular airline defendant is subject to the statute. "Generally, to determine the applicability of [the Rehabilitation Act], [a court] must determine whether the government intended to give [the defendant] a subsidy, as opposed to compensation." *Shotz*, 420 F.3d at 1335 (citations and internal quotation marks omitted) (alteration in original).

In *Shotz*, the plaintiffs argued that the Stabilization Act constituted "federal financial assistance" such that the Rehabilitation Act applied to American Airlines. *Id.* However, Congress passed the "Stabilization Act in response to the enormous economic crisis the airline industry faced as a result of the September 11 terrorist acts," *id.* at 1336, not to provide a subsidy that would subject airlines to liability under the Rehabilitation

---

[4] In response, Congress enacted the Air Carrier Access Act as an amendment to the Federal Aviation Act ("FAA"). *See Gilstrap v. United Air Lines, Inc.*, 709 F.3d 995, 1000 (9th Cir. 2013).

Act. *Id.* at 1337; *see also id.* at 1336 ("Additionally, our conclusion that Congress clearly did not intend for the Rehabilitation Act to apply to airline carriers is further buttressed by the very existence of the Air Carrier Access Act...").

Tavares has not pled facts indicating that United has received some form of subsidy such that it could be liable under the Rehabilitation Act. Accordingly, the Rehabilitation Act claims must be dismissed.

### E. Railway Labor Act Claim

Plaintiff brings a claim under the Railway Labor Act ("RLA"). *See* Third Am. Compl. at 15. His claim appears to be that IAM and United conspired against him, resulting in the union's refusal to proceed with further appeal of his termination. It is difficult to analyze the claim, as plaintiff does not specify which provision of the RLA he invokes. The Court therefore assumes that the plaintiff brings suit under § 152, which sets forth the general duties of employers, employees, and unions. *See Biel v. Airline Pilots Assoc.*, 620 F. Supp. 1422, 1422–23 (E.D. Va. 1985) ("In actions in which the duty of fair representation by a labor union is an issue, the provision of the Railway Labor Act almost invariably litigated is...45 U.S.C. § 152, which specifies the general duties of carriers, their officers, agents, and employees, and the unions."). Section 152 has several provisions. In relevant part, the Fourth provision of § 152 makes it unlawful for airlines to interfere with employees' rights to organize. *See* § 152, Fourth.

The Court finds that plaintiff has failed to set forth sufficient facts to state a plausible claim under the RLA against the United defendants.[5] Plaintiff has not pled any facts in support of his theory that the union and United conspired against him. The mere

---

[5] The Court again notes that it only analyzes the claims against the United defendants. The union has not been served in this action.

13

fact that the union declined to appeal his termination to Step 4 of the grievance process does not support a reasonable inference that United engaged in improper interference. There are no facts supporting an inference of collusion, only conclusory allegations which cannot support a claim under the RLA. Accordingly, the claim is dismissed.

## IV. Conclusion

For the foregoing reasons, it is hereby

ORDERED that the defendant's motion to dismiss (Dkt. No. 26) is GRANTED. It is further

ORDERED that the third amended complaint is DISMISSED with prejudice, as the Court believes amendment would be futile under the circumstances. *See Morefield v. Bailey*, 959 F. Supp. 2d 887, 907 (E.D. Va. 2013) ("where amendment is futile, courts have exercised their discretion to deny leave to amend and dismiss with prejudice") (citation omitted).

An appropriate Order shall issue.

The Clerk is directed to forward a copy of this Memorandum Opinion to the *pro se* plaintiff.

Date: August __/2015

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge